UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
**WILENTZ, GOLDMAN & SPITZER P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000
DAVID H. STEIN, ESQ.
Attorneys for Creditor, MJL Enterprises, LLC

In Re:

ECO LIGHTING USA LLC,

            Debtor.

Case No.: 22-11314 (VFP)

Chapter 11

(Subchapter V Case)

Judge: Hon. Vincent F. Papalia

Hearing Date: September 22, 2022
            at 11:00 a.m.

### OBJECTION OF MJL ENTERPRISES, LLC
### TO DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION
### AND RESERVATION OF RIGHTS

MJL Enterprises, LLC ("MJL"), by and through its counsel, hereby files this Objection to the Subchapter V Plan of Reorganization (as may be further amended, the "Plan") [Docket No. 61] filed by Eco Lighting USA LLC (the "Debtor"), and in support thereof, states as follows:

### BACKGROUND

1. On February 18, 2022 (the "Petition Date"), Debtor filed its Voluntary Subchapter V Chapter 11 Petition in the United States Bankruptcy Court for the District of New Jersey [Docket No. 1] pursuant to the provisions 11 U.S.C. §101, et. seq. (the "Bankruptcy Code).

2. Debtor continues to operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

#13344640.2 174106.001

3. Debtor has retained as its counsel the law firm of Levitt & Slafkes, P.C. as approved by Court Order dated March 14, 2022 [Docket No. 34].

4. Mark E. Hall, Esq. was appointed Subchapter V trustee by the Office of the United States Trustee on February 24, 2022 [Docket No. 10].

5. On July 19, 2022, the Court entered an Order and Notice under Subchapter V of Chapter 11 Fixing Dates for Hearing on Confirmation of Chapter 11 Plan, Filing Acceptances or Rejections of Plan and Filing Objections to Confirmation of Chapter 11 Plan [Docket No. 64].

6. As a result of mailing and service issues, the Confirmation Hearing for the Plan is now scheduled for hearing on September 22, 2022, with Ballots to be filed and served upon Debtor's counsel by September 15, 2022 and Objections to Confirmation to be filed and served by September 15, 2022.

7. MJL has voted its Class 2 Ballot to reject Debtor's Plan.

8. Debtor's Chapter 11 was precipitated by an on-going dispute between MJL and Debtor in which Debtor fraudulently sold to MJL and procured for and on behalf of the United States Government and its military, certain non-conforming and mislabeled N95 and KN-95 breathing masks during the Covid-19 pandemic, which breathing masks were falsely represented by Debtor as having been FDA-approved.

9. As a result of Debtor's conduct as aforesaid, on August 4, 2020 a lawsuit was initiated by MJL against Debtor in the matter styled as <u>MJL Enterprises, LLC v. Eco Lighting USA, Limited Liability Company</u>, Docket No.: 2:20cv437, then pending in the United States District Court for the Eastern District of Virginia (Norfolk) (the "District Court Action").

#13344640.2 174106.001

10. Following a four (4) day jury trial in the District Court Action, on December 20, 2021 a judgment was entered in favor of MJL against Debtor in the amount of $300,000.00 (the "Judgment"), which Judgment included a finding of fraud. [Claim's Register 4-1]

11. Subsequent to entry of the Judgment, MJL commenced efforts to collect on same and caused the United States Marshal's Service to levy upon Debtor's bank accounts (the "Bank Accounts") maintained at TD Bank. As a result of this execution and levy on the Bank Accounts, TD Bank froze the Debtor's aggregate funds on deposit, which totaled no less than the sum of $101,200.00.

12. As a result of Debtor's bankruptcy filing, the District Court dissolved the Writ of Garnishment which had resulted in the freezing of Debtor's funds on deposit at TD Bank.

13. As of the Petition Date, and according to Debtor's Schedules [Docket No. 31], Debtor had total assets consisting of the following:

| | | |
|---|---|---|
| i. | Cash at TD Bank | $116,200 |
| ii. | Account Receivables | $ 66,722 |
| iii. | Inventory | $142,640 |
| iv. | FFE | $ 2,045 |
| v. | Tools/Equipment | $ 3,050 |

14. Pre-petition, and notwithstanding the pendency of the District Court Action, Debtor purportedly borrowed the approximate sum of $700,000.00 from the Small Business Administration (the "SBA"), based upon three separate borrowings. The only loan documents memorializing the loan, however, are a Note and Security Agreement, as well as a UCC-1 Financing Statement which lists "deposit accounts" as the collateral upon which the SBA's lien is purportedly perfected. No accounting has been produced by Debtor to demonstrate how the funds received from the SBA loan were utilized. [Docket No. 10].

3

15. Throughout this case, Debtor has contended that the SBA maintains a perfected security interest in the funds in Debtor's Bank Accounts; however, according to Chapter 9 of the New Jersey Uniform Commercial Code, the listing of deposit accounts in a UCC-1 Financing Statement is not an acceptable method of perfecting a security interest in the Bank Accounts.

16. N.J. Stat. Ann. § 12A:9-312(b)(1) states that "[A] security in a deposit account may be perfected only by control under 12A:9-314."

17. N.J. Stat. Ann. § 12A:9:314 states that "[A] security interest in … deposit accounts … may be perfected by control of the collateral under … 12A:9-104 …"

18. N.J. Stat. Ann. § 12A:9-104 states:

> (a) Requirements for control. A secured party has control of a deposit account if:
>
> (1) the secured party is the bank with which the deposit account is maintained;
>
> (2) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or
>
> (3) The secured party becomes the bank's customer with respect to the deposit account.

19. None of the three options provided for in N.J. Stat. Ann. § 12A:9-104 for the SBA to have control over the Bank Accounts exist in the present matter.

20. As to the first option for the SBA to have control of Debtor's Bank Accounts, the SBA is not the bank with which the Bank Accounts are maintained.

21. As to the second option for the SBA to have control of Debtor's Bank Accounts, no documentation has been provided to demonstrate that the Debtor, the SBA, and TD Bank have entered into any agreement regarding the SBA's directing of the disposition of funds in the Bank Accounts.

4

22. As to the third option for SBA to have control of Debtor's Bank Accounts, there is no indication that the SBA has become TD Bank's customer with respect to the Bank Accounts.

23. While the SBA may assert that the funds in the Bank Accounts maintain their perfected status as proceeds from "accounts" in which the SBA does appear to have a perfected security interest pursuant to N.J. Stat. Ann. § 12A:9-315, and even if this were legally correct, the $202,000.00 advance to Debtor from the SBA in December of 2021, a mere two months before the filing of this Bankruptcy Case, calls into question the source of the funds located in the Bank Accounts, and the ability of the SBA to claim that these funds all represent proceeds of accounts.

24. At this juncture, no effort has been made to challenge the SBA's secured position, nor has the SBA ever proven the extent, validity and amount of its lien and security interest. Instead, , Debtor's Plan fully accepts the premise that the SBA is fully secured, despite the apparent defect in the SBA loan documents and the fact that the SBA's lien and security interest did not attach to the Bank Accounts at the time of filing which, at that time, totaled at least $101,200.00.  At a minimum, the Plan should take this into account and allocate such funds to Unsecured Creditors.

## ARGUMENT

25. A Subchapter V chapter 11 plan must, at a minimum, contain (i) a brief history of debtor's business operations, (ii) a liquidation analysis, and (iii) projections with respect to the ability of debtor to make payments under the proposed plan. 11 U.S.C. § 1190 (1). A Subchapter V chapter 11 plan must also provide for the submission of all or a portion of debtor's future income or earnings to the supervision and control of the trustee as is necessary

5

for the execution of the plan. 11 U.S.C. § 1190 (2). Here, Debtor proposes a thirty-six month plan despite the option to pay creditors back over a longer period of time.

26. Debtor, as plan proponent, bears the burden of proving by at least a preponderance of the evidence that a Subchapter V plan satisfies all the requirements of Sections 1191 and 1129(a) of the Bankruptcy Code. In re Walker, 628 B.R. 9, * (Bankr E.D. PA. 2021). ("To obtain confirmation of the Plan under chapter 11 of the Bankruptcy Code, Debtor has the burden of proving that the plan satisfies all the confirmation requirements of the Bankruptcy Code, here, 11 U.S.C. § 1191(a) and § 1129(a)"); In re Robinson, No. 20-11471, 2021 WL 3713850, at *4 (Bankr. D. Kan. Aug. 20, 2021) ("The debtor, as the [Subchapter V] chapter 11 plan proponent, has the burden of proving by a preponderance of the evidence that his plan satisfies the statutory requirements for confirmation."); In re Rubicon U.S. REIT, Inc., 434 B.R. 168, 174 (Bankr. D. Del. 2010); Mercury Capital Corp. v. Milford Connect. Assoc., L.P., 354 B.R. 1, 6 (D. Conn. 2006).

27. Further, in examining the requirements of the Bankruptcy Code for confirmation, the Court has an independent duty to determine if a Subchapter V plan satisfies the confirmation requirements set forth in Section 1129 of the Bankruptcy Code. See In re H.H. Distributions, L.P., 400 B.R. 44, 50 (Bankr. E.D. Pa. 2009); In re MJ Metal Products, Inc., 292 B.R. 702, 704 (Bankr. D. Wyo. 2003).

28. Even if a plan proponent does not have the consent of all impaired classes of claims or interests, a Subchapter V plan may still be confirmed on a non-consensual basis. 11 U.S.C. § 1191(b).

29. Under Section 1191(b) of the Bankruptcy Code, a court shall confirm a non-consensual Subchapter V plan if it does not discriminate unfairly against any impaired, non-

6

consenting class, is fair and equitable with respect to each class of impaired claims or interests that has rejected the plan, and meets the requirements of Section 1129(a) of the Bankruptcy Code. 11 U.S.C. § 1191(b); see In re Body Transit, Inc., 619 B.R. 816, 822 (Bankr. E.D. Pa. 2020).

30. MJL submits that Debtor, as the plan proponent, has not met its burden under Sections 1191 and 1129(a) of the Bankruptcy Code and consequently, the Plan cannot be confirmed as a matter of law.

31. First, the Plan provides for the disparate treatment of creditors in direct violation of Sections 1129(a)(1) and 1123(a)(4) of the Bankruptcy Code given that the SBA was not secured against the Bank Accounts at the time the petition was filed.

32. Second, and given the improper treatment of the SBA claim, the Plan unfairly discriminates against and is not fair and equitable with respect to MJL's claim which, as a result, cannot be crammed down under Section 1191(b) of the Bankruptcy Code. 11 U.S.C. 1191(b).

33. Third, given that a portion of the Judgment is grounded on a finding of fraud, the fraud judgment should be deemed non-dischargeable pursuant to Sections 1192 (2) and 523(a) of the Bankruptcy Code.

34. Fourth, the Plan is not feasible under Section 1129(a)(11) of the Bankruptcy Code given Debtor's continued losses and past performance.

35. Fifth, Debtor's Plan has not valued, accounted for or provided projections for preference claims and recoveries (including those that can be asserted against insiders), in a liquidation analysis despite the fact that $700,000 in SBA loan proceeds were used, almost exclusively, by Debtor's insiders, Sean Blackman and Nicole Davidson.

7

36. Accordingly, for these reasons as more fully set forth herein, this Court should deny confirmation of the Plan.

    A.    **The Plan's Disparate Treatment of Claims Violates Sections 1123(a)(4) and 1129(a)(1) of the Bankruptcy Code.**

37. Section 1129(a)(1) of the Bankruptcy Code, requires that "[t]he plan complies with the applicable provisions of" the Bankruptcy Code. 11 U.S.C. 1129(a)(1). Disparate treatment of a particular claim or claims within a single class violates 11 U.S.C. § 1123(a)(4), which states, in relevant part, "a plan shall … provide the same treatment for each claim or interest of a particular class…" See In re W.R. Grace & Co. 475 B.R. 34, 124 (Bankr. Del. 2012).

38. Article 2 of the Plan sets forth the treatment of all classes and provides that Class 1, the SBA, is to receive 100% of its claim, despite being partially unsecured and having minimal collateral on the Petition Date, while Class 2 general unsecured creditors will receive a payment percentage of 21% ($90,000) payable over thirty-six months.

39. The Plan's proposed treatment of Class 2 General Unsecured Claims violates Section 1123(a) of the Bankruptcy Code. Equality of treatment is a core requirement of the Bankruptcy Code. See Begier v. IRS, 496 U.S. 53, 58, 110 S.Ct. 2258 (1990); In re Combustion Eng'g, Inc., 391 F.3d 190, 239 (3d Cir. 2004), as amended (Feb. 23, 2005) ("The Bankruptcy Code furthers the policy of 'equality of distribution among creditors' by requiring that a plan of reorganization provide similar treatment to similarly situated claims.").

40. Furthermore, the Class 2 claim of MJL includes a finding of fraud which is separate and distinct from the claims of other Class 2 unsecured creditors. Given that a fraud claim is to be deemed non-dischargeable under Subchapter V pursuant to Sections 1192 (2) and 523(a) of the Bankruptcy Code, MJL should receive a priority and a greater right to recovery

8

on its fraud claim as asserted against the Debtor. In re Cleary Packaging, 36 F.4th 509, 514-518 (4th Cir. 2022).

41. While the Bankruptcy Code does not define what constitutes equal treatment, the Third Circuit has held that, at a minimum, it means that each holder of a claim in a class has an equal opportunity to collect on its claim. In re W.R. Grace & Co., 729 F.3d 311, 327 (3rd Cir. 2013) ("[w]hat matters, then, is not that claimants recover the same amount but that they have equal opportunity to recover on their claims."). Further, "differences in timing of distributions and other procedural variations that have a legitimate basis do not generally violate §1123(a)(4) unless they produce a substantive difference in a claimant's opportunity to recover." Id.

42. The Plan violates this core bankruptcy principle that similarly situated claims must be treated similarly for purposes of distribution. The disparate treatment between Class 1 (the SBA) and Class 2 (General Unsecured Claims) violates Section 1123 of the Bankruptcy Code and, accordingly, the Plan cannot be confirmed. See In re W.R. Grace & Co., F.3d 311 at 327 ("… all claimants in a class must have 'the same opportunity' for recovery.").

43. In addition, Plan classification must be rationally based. It is unclear why the creditor identified as "Carmen Williams" in the amount of $100,000 is included in Class 2 of the Plan or whether this claim is just another attempt by insiders to prefer creditors in this case. Noteworthy is that Carmen Williams has not filed any Proof of Claim in these proceedings. Further explanation/clarification should be made as to how the Williams' claim arose and his/her entitlement to receive any distribution under the Plan.

B. The Plan Unfairly Discriminates and is not Fair and Equitable.

44. Section 1191(b) governs the cramdown requirements of a Subchapter V plan and provides that a court must confirm a Subchapter V plan if, with respect to each impaired

9

class that has not accepted it, the plan does not discriminate unfairly and is fair and equitable and meets the other requirements of Section 1129(a) of the Bankruptcy Code. 11 U.S.C. § 1191(b); In re Body Transit, Inc., 619 B.R. 816, 822 (Bankr. E.D. Pa. 2020) ("a plan in a Subchapter V case can be confirmed without the consent of a class of creditors if 'the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.").

45. In order for the plan to be "fair and equitable" with respect to a non-consenting class of unsecured creditors, a plan must provide that the debtor apply all of its disposable income for at least a three (3) year period for making payments under the plan, that the value of the plan distributions is not less than the debtor's disposable income, and that there is a reasonable likelihood that the debtor will be able to make all payments under the plan or provide appropriate remedies in the event payments are not made. 11 U.S.C. § 1191(c); Body Transit, Inc., 619 B.R. at 822. Section 1191(d) of the Bankruptcy Code defines "disposable income" as the debtor's income that is not reasonably necessary "for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor." 11 U.S.C. § 1191(d).

46. In these proceedings, MJL issued a Rule 2004 Subpoena to Debtor requesting financial records from Debtor for the time period between 2018 and 2022.

47. In response to the Rule 2004 Subpoena, Debtor's General Ledger was produced for the time periods of January through December 2021 and January through July 2022. A review of these ledgers reveals substantial inconsistencies and accounting irregularities which amount to a dissipation of Debtor's assets. In addition, the financial records that Debtor produced are simply incomplete.

48. Debtor received approximately $700,000 in SBA loans. The $700,000 SBA loan disbursements to Debtor were listed as Loans Receivable rather than as a Liability on its Balance Sheet, which creates a misinterpretation of the true financial condition of the company. The SBA loans are not properly accounted for in Debtor's financial records, nor on its tax returns. A copy of an extract (the balance sheet) from Debtor's Federal Tax filing for 2021 is attached hereto as **Exhibit "A"**.

49. Debtor's SBA loans payable are recorded as net of Loans Receivable, rather than as a liability on the Balance Sheet. Copies of extracts from Debtor's December, 2021 and July, 2022 General Ledger showing the SBA book entries are attached hereto respectively as **Exhibit "B"** and **Exhibit "C"**.

50. Debtor has paid out nearly all of the $700,000 in SBA loan proceeds to Sean Blackman and Nicole Davidson, both insiders. First, $304,500 was paid to Blackman and Davidson in the last 14 months (Jan 2021 to Feb 2022) as weekly distributions of $2,500 each. Copies of extracts from Debtor's General Ledger for December, 2021 and July, 2022 showing member draws are attached hereto respectively as **Exhibit "D"** and **Exhibit "E"**. In addition, both Blackman and Davidson each paid themselves "net salaries" of $2,500 weekly, for an additional total of $260,000 per year. This drain on Debtor's cash flow to the detriment of creditors was, in fact, more than the $564,500 set forth above, because Debtor also paid Blackman's and Davidson's withholding taxes. Furthermore, this amount does not include any other family members of the insider control group who are on Debtor's payroll.

51. The 2021 distribution of $267,500 is not disclosed as required on Debtor's IRS 2021 K-1s. A copy of Debtor's 2021 K-1s is attached **Exhibit "F"**. In addition to the payouts set forth hereinabove, Blackman took Travel Advances of $7,000 in 2021 and $2,500 in

11

#13344640.2 174106.001

January, 2022. Copies of extracts from Debtor's General Ledger for December, 2021 and July, 2022 showing travel advances are attached hereto respectively as **Exhibit "G"** and **Exhibit "H"**. These types of transactions are normally recorded as a receivable to an employee until documentation is received validating the expenses, at which time the travel expenses are reconciled with the receipts; to MJL's knowledge, a reconciliation never occurred with these travel advances. Notably, during this same time period, Debtor's financial records indicated that Debtor had minimal net income.

52. Finally, Debtor's SBA loan application dated November, 2021 for the $200,000 loan increase falsely states that it had only $8,500 in debt (excepting SBA loans). A copy of an extract from Debtor's Schedule of Liabilities for the SBA loan application dated December, 2021 is attached hereto as **Exhibit "I"**. In fact, Debtor's financials disclose for this time period indicate additional liability of $127,023 in credit card debt alone, much of which predates the time of the SBA application This liability does not include the $300,000 owed to MJL as a result of the claims in the District Court Action or other amounts owing to creditors. A copy of an extract from Debtor's General Ledger for December, 2021 showing additional liabilities is attached hereto as **Exhibit "J"**.

53. Based upon a review of the Debtor's financial documents received in connection with the Rule 2004 Subpoena, it appears that Debtor has not provided a true picture of its financial state of affairs, its true financial dealings with the SBA, its insiders and unsecured creditors, and the dissipation of the SBA loan proceeds for the benefit of the insiders.

54. Based upon the insider transactions alone as set forth herein, it is readily apparent that the Debtor's Plan and treatment of unsecured claims cannot be deemed to be fair and equitable.

#13344640.2 174106.001

55. In summary, and based upon the above, the Plan does not comply with Section 1191(b) of the Bankruptcy Code. Specifically, the Plan is not fair and equitable with respect to Class 2 General Unsecured Claims. Under the Plan, Class 2 General Unsecured Claims are entitled to distributions for a three (3) year period from the reorganized Debtor's disposable income, while Sean Blackman and Nicole Davidson, both insiders, as well as other insider/family members, disproportionately receive a windfall through compensation, payment of taxes, benefits and other perks that are not available to other creditors. This conduct should not be condoned.

56. Class 2 General Unsecured Creditors are unfairly discriminated against under the Plan. Accordingly, the Plan cannot be crammed down over the objection of impaired General Unsecured Creditors in Class 2, including MJL.

C. <u>The Plan is not Feasible.</u>

57. Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan unless such liquidation is proposed under the plan. 11 U.S.C. 1129(a)(11); <u>In re U.S.A. Parts Supply</u>, 630 B.R. 487, 492 (Bankr. N.D.W. Va. 2021) (in discussing confirmation of a Subchapter V of Chapter 11 Plan, "[n]otably, included in the aforementioned [confirmation] requirements is § 1129(a)(11)."); <u>see also</u> <u>In re W.R. Grace & Co.</u>, 475 B.R. at 114; <u>In re Sullivan</u>, 626 B.R. 326, 334 (Bankr. D. Colo. 2021) ("Although there are unique confirmation requirements for Subchapter V plans … the feasibility requirement of § 1129(a)(11) [still applies]."); <u>In re Port Arthur Steam Energy, L.P.</u>, 629 B.R. 233, 237 (Bankr. S.D. Tex. 2021) (Section 1181 of the Bankruptcy Code "does not exclude Section 1129(a)(11)....").

13

58. Debtor bears the burden of proving the Plan is feasible by a preponderance of the evidence. In re S. Canaan Cellular Invs., Inc., 427 B.R. at 61. "Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." Id. (quoting In re Hoffman, 52 B.R. 212, 215 (Bankr.D.N.D.1985)).

59. The purpose of the chapter 11 feasibility requirement is to prevent confirmation of "visionary schemes." See In re S. Canaan Cellular Invs., Inc., 427 B.R. 44, 61 (Bankr. E.D. Pa. 2010). Under Section 1129(a)(11) of the Bankruptcy Code, a debtor must show that there is a "reasonable prospect of success" and that the plan is "workable." See id. (citing In re Pikes Peak Water Co., 779 F.2d 1456, 1460 (10th Cir.1985); In re Clarkson, 767 F.2d 417, 420 (8th Cir.1985); In re Monnier Bros., 755 F.2d 1336, 1341 (8th Cir.1985); Corestates Bank, N.A. v. United Chemical Technologies, Inc., 202 B.R. 33, 45 (E.D.Pa.1996); In re Sugarhouse Realty, Inc., 192 B.R. 355, 366 (E.D.Pa.1996)). In short, the feasibility standard requires a debtor to show "that it can accomplish what it proposes to do, in the time period allowed, and on the terms set forth in the plan." In re Pearl Res. LLC, 622 B.R. 236, 263 (Bankr. S.D. Tex. 2020) (analyzing the feasibility of a Subchapter V plan).

60. In the Third Circuit, courts consider various factors to determine feasibility of a plan, including "assessment of the debtor's capital structure, the earning power of the business, economic conditions, and the ability of the corporation's management." In re W.R. Grace & Co., 475 B.R. at 114. The debtor must also provide the bankruptcy court with an estimate of its future earning capacity. See In re Phila. & W. Ry. Co., 51 F.Supp. 129, 131 (E.D.Pa.1943).

61. Here, Debtor has not shown by a preponderance of the evidence that the Plan is feasible. Under the Plan, Debtor submits that administrative expense claims will be paid in full

14

#13344640.2 174106.001

and that Class 1, the SBA, will be fully paid; however, Debtor's financial projections, as set forth on Exhibit A" to the Plan, lack evidentiary support and do not show that there is reasonable likelihood that Debtor will be able to make all payments under the Plan. In re Biz as Usual, LLC, 627 B.R. 122, 131 (Bankr. E.D. Pa. 2021) (denying confirmation of a chapter 11 plan was uncertain and speculative); see also In re Swiftco, Inc., No. 85-07083-H1-5, 1988 WL 143714, at *7 (Bankr. S.D. Tex. Oct. 5, 1988) (denying confirmation of chapter 11 plan of reorganization that merely proposed speculative projections).

62. In fact, Debtor's projections in Exhibit "A" of the Plan are based on nothing more than unsubstantiated assumptions. Debtor has not provided sufficient information of "the debtor's capital structure, the earning power of the business, economic conditions, and the ability of the corporation's management" for the Court to determine feasibility. In re W.R. Grace & Co., 475 B.R. at 114. The Debtor's latest Monthly Operating Report for June, 2022 show continued losses. [Docket No. 69].

63. Accordingly, Debtor has not provided information to evidence how it intends to generate sufficient profit following confirmation of the Plan in order to operate its businesses and avoid a future liquidation. See In re Biz as Usual, LLC, 627 B.R. at 130; In re Swiftco, Inc., 1988 WL at *7 [internal citations omitted] ("[w]here the financial realities do not accord with the debtor's projections, or where the debtor's assumptions are unreasonable and the fulfillment of the plan is unattainable, the plan should not be confirmed.").

64. Without additional substantiation, the Plan as currently proposed, is not feasible and provides nothing more than "visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." In re Kreider, 2006 WL 3068834 at *5 (Bankr. E.D. Pa. Sept. 27, 2006).

15

#13344640.2 174106.001

65. At a minimum, the Plan should provide for: (i) an accounting for the use and dissipation of the SBA loan proceeds; (ii) a review of all insider and 90 day preference claims; (iii) a determination of the SBA's claim as of the Petition Date; (iv) a sixty (60) month payout which includes recovering of preference claims and distributions under the Plan; (v) a continuation of the Subchapter V trustee's appointment, post-confirmation, which expenses will be borne by the estate, in order to monitor Plans compliance, distributions, etc.; and (vi) granting such other and further relief as this Court deems just and appropriate under the circumstances.

## RESERVATION OF RIGHTS

66. MJL reserves any and all rights to supplement and/or amend this Objection and expressly reserves the right to raise any additional objections with respect to the Plan.

**WHEREFORE**, MJL Enterprises, LLC respectfully requests that this Court enter an order: (a) sustaining this Objection; (b) denying confirmation of the Plan; and (c) granting such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: September 2, 2022

                                        Respectfully submitted,

                                        **WILENTZ, GOLDMAN & SPITZER P.A.**
                                        *Attorneys for Creditor,*
                                        *MJL Enterprises, LLC*

                                              /s/ David H. Stein, Esq.
                                      By: _____
                                           DAVID H. STEIN, ESQ.

#13344640.2 174106.001