


**DAVID H. STEIN, ESQ.**

T: 732.855.6126
F: 732.726.6570
dstein@wilentz.com

90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958
732.636.8000

February 10, 2023

***VIA ECF***
Honorable Vincent F. Papalia, U.S.B.J.
United States Bankruptcy Court
M.L. King Jr. Federal Building & Courthouse
50 Walnut Street, 3rd Floor
Newark, NJ 07102

Re: **Eco Lighting USA LLC**
**Chapter 11 (Subchapter V)**
**Case No.: 22-11314 (VFP)**

Dear Judge Papalia:

This law firm represents MJL Enterprises, LLC ("MJL"), a creditor of the Debtor, Eco Lighting USA LLC (the "Debtor"), in the above referenced Chapter 11 (Subchapter V) proceeding. Please accept this letter (the "Supplemental Objection"), in lieu of a more formal objection to Debtor's Amended Plan of Reorganization (the "Amended Plan"), scheduled for a confirmation hearing on **February 23, 2023 at 11:00 am**. This Supplemental Objection is submitted in further support of and to supplement the Objection of MJL to Debtor's Subchapter V Plan of Reorganization and Reservation of Rights previously filed in this matter on September 2, 2022 (the "Previous Objection", Docket No. 71).

The facts and statement of law relevant to this Supplemental Objection are set forth in the Previous Objection and are incorporated by reference herein as if fully set forth at-length; said facts and statement of law equally apply to the contents of the current Amended Plan.

MJL has filed a ballot with the Debtor rejecting the Debtor's latest Amended Plan.

The following is a chart which evidences the Debtor's monthly income, expenses and operating results since the filing of its Chapter 11 petition, and is based upon the Debtor's own Monthly Operating Reports filed herein:[1]

[1] January and February, 2023 operating results are not yet available and/or docketed.





| Month | Cash Receipts | Cash Disbursements | Net Cash Flow |
|---|---|---|---|
| 03-2022 | $114,651.55 | $ 71,436.23 | $ 43,215.32 |
| 04-2022 | $ 90,892.14 | $ 86,103.30 | $ 4,788.84 |
| 05-2022 | $110,619.54 | $ 91,305,30 | $ 19,314.24 |
| 06-2022 | $ 46,086.46 | $106,471.46 | $(60,385.00) |
| 07-2022 | $ 70,609.89 | $ 57,996.89 | $ 12,613.00 |
| 08-2022 | $ 57,870.30 | $ 58,876.14 | $( 1,005.84) |
| 09-2022 | $ 68,492.29 | $ 52,065.78 | $ 16,426.51 |
| 10-2022 | $ 91,177.62 | $ 72,316.36 | $ 18,861.26 |
| 11-2022 | $ 43,548.44 | $ 69,796.20 | $(26,247.76) |
| 12-2022 | $ 47,119.03 | $ 62,166.63 | $(15,047.60) |
| **Cumulative Total:** | | | **$ 12,532.97** |
| **Monthly Average:** | | | **$ 1,253.30** |

Counsel for MJL has spoken extensively both to counsel for the Debtor and to the Subchapter V trustee to express MJL's concerns and issues with respect to the Amended Plan. It is clear that, based upon testimony from the Section 341(a) hearing, the case is being conducted solely for the benefit of insiders, as evidenced by the $718,000 draw down and usage of the SBA secured loan to pay insider wages, the payments of the related taxes and benefits, and the total failure to challenge the lien position of the SBA for those funds maintained in the operating bank account which were available to creditors as of the petition date. In addition, the Debtor's principals have what we understand to be remote jobs and employ several family members/related parties without any clear role in the Debtor's operations.

In addition to the above, MJL has the following additional objections:

i. <u>Objections to Debtor's Payroll</u>.

First, MJL does not believe that the Debtor's Plan is being presented in good faith. A review of payroll expense and the gross income shows that payroll is more than fifty percent (50%) of gross income, and, in some months, payroll is as much as seventy percent (70%). The amount of payroll for a well-managed business is typically no more than 25-30 percent of gross income.

Debtor has made no reduction in employee staffing and payroll since the filing of this chapter 11 Sub-V proceeding on February 28, 2022. Payroll reduction is the normal pathway to good business management. The national news in January 2023 reported major U.S. companies cut employees and made layoffs at Google, Microsoft, Amazon, Zoom, PayPal, 3M and others as a cost cut measure because of reduced income. Reviewing the Debtor's payroll and its past and projected 5 year plan, it shows no reduction in employees, no reduction in payroll, and no intention to reduce its overhead, even where it can easily be done. Debtor cannot justify its Amended Plan based on this factor alone.

Second, an examination of Debtor's First Amended Plan (See Amended Plan: Section 2.5) states that funding is based upon having $5,000.00 per month to implement the required payments.






According to the Amended Plan, Section 1.7, the source of this $5,000 is Sean Blackman, a co-owner of the Debtor, taking a cut in his monthly salary of about $20,000 per month.

ii. Objection to Excessive Insiders Salaries.

Further examination of the company financial documents discloses that both co-owners, Sean Blackman and Nicole Davidson, continue to take a salary of approximately $20,000 per month, a salary maintained even during the pandemic and financial downturn of revenues. The 2021 General Ledger Net Payroll Expenses indicates payroll disbursements to owner Sean Blackman in the amount of $133,000.00, and to owner Nicole Davidson in the amount of $134,000.00 - a total of $267,000.00 for these two employees alone. In addition to the net payroll above, the company also paid other employees, together with the employment taxes and servicing fees for all employees.

The Debtor's projected 5 year plan shows no reduction in payroll or reduction in employees. In fact, employee salaries, taxes, and benefits constitute its main expenses after COG. The Income for the year 2021 indicates approximately $70,000.00 in any given month as Debtor's gross profit; accordingly, the total payroll of the company is in excess of half (50%) of total income. A further breakdown of the reasons why Debtor is required to maintain such a high payroll and number of employees is required.

The profit and losses statement for year 2022 shows no reduction in payroll and distribution was made to the owners, Sean Blackman, and Nicole Davidson. There does not appear to be any justification for these high salaries at this time of reduced gross income.

iii. Objection to Plan to Seek Claw Back and Avoidable Transfers to Insiders.

Debtor's proposed First Amended Plan, Section 1.8 Recovery of Avoidable Transfers, states that avoidable preferences will not be pursued for the benefit of creditors. MJL objects to this provision of the Amended Plan.

11 U.S. Code §547 Preferences, allows the Court to determine as preferential transfers any disbursements or draws made to insiders by the Debtor as avoidable as property of the estate that must be recovered for the benefit of creditors. Here, this period of lookback for insiders is one year back from the filing date of 2/28/2022, or February 27, 2021.

An insider is classified and defined in Bankruptcy Code Section 101 as family members, business partners, and the principals of the Debtor. Eco Lighting USA, LLC is owned by Nicole Davidson and Sean Blackman, who are its principals and, thus, by definition are insiders.

Debtor's 2021 Schedule K-1 Tax Returns and financial documents for 2021 and January/February 2022 show disbursement of equity for capital accounts made to the Debtor's insiders which should be classified as avoidable preferences and clawed back, as follows:

For the year 2021 Draws disbursement by Sean Blackman total $133,000.00
For the year 2022 Draws disbursement by Sean Blackman total $17,500.00 (Jan/Feb 2022)
For the year 2021 Draws disbursement by Nicole Davidson total $134,000.00
For the year 2022 Draws disbursement by Sean Blackman total $20,000.00 (Jan/Feb 2022)

The details of the above are set forth in the attached Excel spreadsheet marked as **Exhibit "A"**.







Section 547 of the Bankruptcy Code permits the court to recover, or claw back, a preference, the ability to void transfers occurring in the 90 days prior to the filing of a bankruptcy petition, and where the creditor is an "insider" the lookback period is extended to 12 months (1 year) of the filing date. The lookback period of one year in this case would go back to February 27, 2021. 11 U.S. Code § 704, grants the trustee power to take action to recover all legal or equitable interests of property of the debtor's estate for the benefit of creditors. This includes the power to recover preferential transfers made to insiders of the debtor.

A review of the Bankruptcy Petition, Schedules, exhibits, P&L Statements, and Tax Returns filed by the Debtor discloses that various distributions where made to the Debtor's insiders that should be classified as avoidable preferences and clawed back.

iv. Objection to Description of Judgment.

Section 1.6 (Events Leading to the Filing of the Bankruptcy Case) should be rephrased to show that the MJL lawsuit against the Debtor was for the sale of counterfeit masks, and judgment is nondischargeable fraud as contemplated in §523(a)(2)(A). The following suggested language is acceptable to this Class 2 creditor.

*The bankruptcy filing was made due to the entry of a judgment against Debtor by MJL Enterprises, LLC in the amount of $300,342.30 resulting from the sale of counterfeit masks for using during the COVID-19 pandemic. The judgment included finding of fraud rendering the judgment in whole or part a debt contemplated under §523(a)(2)(A). After judgment was entered MJL immediately levied upon Debtor's bank accounts.*

v. Objection to Article 5 Discharge of Debtor.

In keeping with MJL's fraud judgment, the language of this section must add the phrase that the Class 2 Claim of MJL Enterprises is a debt of the kind specified in 523(a)(2)(A) and is a nondischargeable debt. The following language is a proposed new wording of the discharge section.

***If the Plan is confirmed under §1191(a),*** *on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d) of the Bankruptcy Code, except any debt of the kind specified in §523(a)(2)(A), including the MJL Enterprises LLC Class 2 Claim, which shall be deemed nondischargeable.*

***If the Plan is confirmed under § 1191(b ),*** *as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 114l(d)(l)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt-*

*(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or*

*(2) as applicable, of the kind specified in section 523( a)(2)(A) of this title; that MJL Enterprises LLC Class 2 Claim is in whole or part, a nondischargeable debt.*





vi. Objection to Section 1.3 Debtor's Assets.

Debtor's asset numbers do not match and need to be corrected. See below. On the date of the bankruptcy filing the Debtor's assets consisted of the following:

Bank account balances: **$116,200.00** (page 8, SBA collateral) -- Section 1.5 **$20,000** bank accounts)
Accounts Receivable: **$68,722.68 –** Section 1.5 states **$60,100.00** accounts receivable.
Raw Materials: **$142,640.41 –** Section 1.5 state inventory is **$189,000.00**
Office Furniture: **$2,045.00**
Tools and Equipment: **$3,050.00**

vii. Objection to Section 2.6 Payments.

Paragraph 3 needs to require reconciliation of disposable income yearly.

viii. A minor grammatical change suggested for Section 2.1 Unclassified Claims.

The Plan, Page 7 lists Debtor's estimated Administrative Expenses and treatment under the Plan for Levitt & Slafkes, P.C., states: "A retainer in the amount of $15,000.00 has been paid. Total fees and expenses are not expected to exceed $35,000.00. Any amounts due and owing will be paid as an Administrative Expense in full upon entry of an Order …."

It would appear that Debtor means to say that Total *additional fees* and expenses are not expected to exceed $35,000.00.

**CONCLUSION**

The Debtor bears the burden of proof to confirm a Plan in any Chapter 11 case. Here, the Court should allow the parties sufficient time in which to develop the record and to elicit information through cross-examination regarding confirmation issues, the prospects of reorganization and determination as to whether the Debtor's case will be followed by a further need for reorganization or some other form of court supervision.[2]

Furthermore, the Amended Plan projects an eighty percent (80%) recovery available to unsecured creditors through the Plan. If the Court accepts the Debtor's projections at face value, it is respectfully submitted that the following items should be explicitly included in the Amended Plan or in the Confirmation Order:

[2] At a minimum, the Amended Plan needs to be reconciled regarding the Class 2 treatment (see p. 3 and p. 9; and the references to two Class 3's needs to be corrected; see p. 9 and p. 10; and the method and manner of distributions and financial disclosure information needs to be reconciled or revised. See p. 3, 9, 11 and p. 12.






1. The Debtor shall pay unsecured creditors no less than eighty percent (80%) of their allowed claims through the Plan;

2. The Debtor shall set-aside, on a monthly basis, the necessary funds to pay unsecured creditors in a sinking fund, to be held in escrow by counsel for the Debtor, who shall serve as disbursing agent under the Plan;

3. Distribution to unsecured creditors shall be made quarterly and commence immediately on the first day of each quarterly period following confirmation and thereafter;

4. The Debtor shall, post confirmation, serve monthly operating reports, with accounting information, in their current form, evidencing profitability and payment of all required funds;

5. Should the Debtor fail to comply with the Amended Plan, the projections, and the Confirmation Order, creditors shall have the right to file and serve a notice of plan default with the automatic right of conversion, without the necessity of filing a formal motion;

6. The Amended Plan should provide that the Debtor will reduce all non-essential personnel and/or take a deferral of any benefits, perks, etc... so that creditors may receive the eighty percent (80%) minimum recovery; and

7. All insider Chapter 5 and state law claims shall be tolled for the life of the Plan, plus 60 days, from conversion or the appointment of a trustee so that creditors are not prejudiced by this bankruptcy process.

Based upon a fair sampling of the Debtor's operating results for the past ten months, the Amended Plan as proposed is neither fair and equitable nor feasible. Accordingly, it is respectfully submitted that confirmation of the Amended Plan should be denied.

Respectfully submitted,

/s/ David H. Stein

DAVID H. STEIN

DHS/
cc: Bruce Levitt, Esq. *(via e-mail and ECF)*
Mark Edward Hall, Subchapter V Trustee *(via e-mail and ECF)*
David Gerardi, UST *(via e-mail and ECF)*
Client (via Email)